IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., | ) ) ) | CV 12-95-H-DLC |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| JAMES MURRY, TIMOTHY C. FOX, and LEO GALLAGHER, | ) ) ) | |
| Defendants. | ) ) | |

## **I. Introduction**

Before the Court are the parties' cross-motions for summary judgment. Plaintiff's motion for summary judgment will be denied and Defendants' motion will be granted because Montana's political committee disclosure requirements are constitutional. The public's right to know who is financing political campaigns vastly outweighs the minimal burden imposed by the incidental committee

disclosure and reporting requirements. The Ninth Circuit Court of Appeals has reviewed in an earlier case the same statutes and regulations being challenged by the Plaintiff in this case and found them to pass constitutional muster. *See Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009). Montana's zero-dollar disclosure threshold is not wholly without rationality and the Court will therefore defer to Montana's Legislature to determine its appropriateness.

## II. Background

### A. National Association for Gun Rights, Inc.

Plaintiff is a non-profit corporation incorporated in Virginia with its principal place of business in Fredricksburg, Virginia. Plaintiff is a tax-exempt organization under Internal Revenue Code § 501(c)(4). Plaintiff's mission is "to defend the right to keep and bear arms from all of its enemies, and advance that God-given right by educating the American people and urging them to action in the public policy process." (Doc. 1 at 4-5.) Plaintiff's budget for 2011 was approximately $3.5 million, and its anticipated budget for 2012 is $5 to 6 million. Plaintiff has 6,427 members in Montana and 1.8 million members in the United States. Plaintiff previously sought to mail postcards to Montana voters discussing then-gubernatorial candidate and now-Governor Steve Bullock's record on gun

rights issues prior to the 2012 election. Plaintiff did not mail the postcards following this Court's denial of its motion for preliminary injunction, as discussed further below. Plaintiff intends to mail similar postcards to Montana voters in the 2014 and 2016 elections. (Doc. 29 at 14.)

### B. Montana Political Committee Laws

A political committee is defined in Montana as:

> a combination of two or more individuals or a person other than an individual who makes a contribution or expenditure:
> (a) to support or oppose a candidate or a committee organized to support or oppose a candidate or a petition for nomination; or
> (b) to support or oppose a ballot issue or a committee organized to support or oppose a ballot issue; or
> (c) as an earmarked contribution.

Mont. Code Ann. § 13-1-101(22). A "person means an individual, corporation, association, firm, partnership, cooperative, committee, club, union, or other organization or group of individuals." § 13-1-101(20).

There are three types of political committees in Montana: principal campaign committees, independent committees, and incidental committees. Admin. R. Mont. 44.10.327(1). A principal campaign committee is specifically organized to support or oppose a particular candidate or issue. An independent committee is not specifically organized to support or oppose any particular candidate or issue but is organized for the primary purpose of supporting or

3

opposing various candidates or issues. An incidental political committee is not specifically organized or maintained for the primary purpose of influencing elections but may incidentally become a political committee by making a contribution or expenditure to support or oppose a candidate or issue. Admin. R. Mont. 44.10.327(2)(a)-(c).

Under Montana law, incidental political committees are required to file a statement of organization identifying the name and mailing address of the committee's appointed campaign treasurer, an existing bank account, names and addresses of any officers, an email address, and the committee's purpose in engaging in campaign advocacy. Admin. R. Mont. 44.10.411. Incidental committees whose contributions or expenditures to local candidates do not exceed $500 do not have to file periodic disclosure reports. *Id.* All other incidental committees disclose their contributions and expenditures through short-form reporting on a schedule prepared and distributed by the Commissioner of Political Practices. *Id.*

**C. Procedural History**

Plaintiff filed a motion for preliminary injunction on October 4, 2012 prior to the 2012 election seeking to mail postcards depicting its view of candidates' voting records and positions on gun rights. Plaintiff intended to spend $20,000 on

postcard mailings to Montana voters criticizing then-candidate Steve Bullock's position on gun rights if the Court enjoined Defendants from enforcing Montana laws relating to incidental committees. Plaintiff refused to register as a political committee under Montana law, arguing the regulations are unconstitutional. (Doc. 1 at 9-10.) The Court denied Plaintiff's motion for preliminary injunction (doc. 16). The parties filed cross motions for summary judgment January 31, 2013, and Plaintiff filed a request for judicial notice in conjunction with its response brief (doc. 28).

### III. Summary Judgment Standard

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### IV. Discussion

**A. Judicial Notice**

Plaintiff requests the Court take judicial notice of the following seven documents from the Commissioner's files:

- The Commissioner's "Summary of Facts and Statement of Findings In the

Matter of the Complaint Against the Missoula Underage Substance Abuse Prevention Team," issued March 19, 2009.

- Document received by the Commissioner on October 24, 2012, stating that Blue Mountain Clinic made expenditures totaling $53.13 in opposition to an abortion-related ballot initiative.

- E-mail and Letter from the Commissioner's office to Blue Mountain Clinic dated October 31, 2012, explaining the clinic's responsibilities as an incidental political committee.

- Letter from the Commissioner's office to Montana Wool Growers (dated January 5, 2010).

- Letter from the Commissioner's office to Montana Wool Growers (dated February 1, 2010).

- Letter from the Commissioner's office to Bridger Fur Co. (dated April 9, 2010).

- The Commissioner's *Accounting & Reporting Manual For Political Committees* (dated November 2011).

Defendant did not respond to Plaintiff's request for judicial notice. Courts may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are either generally known within the court's territorial

jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)-(b). A court may take judicial notice at any stage in the proceedings, including when ruling on summary judgment motions. Fed. R. Evid. 201(d); *Grason Elec. Co. v. Sacramento Municipal Utility Dist.*, 571 F.Supp. 1504, 1521 (D.C. Cal. 1983). State administrative agency documents may be judicially noticed, including documents obtained via government websites. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998-999 (9th Cir. 2010).

The documents Plaintiff wishes the Court to consider are copies of documents contained in the Commissioner's files detailing the Commissioner's dealings with various groups regarding their political committee status. The documents appear to contain facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. To the extent these documents are relevant to the issues at hand, the Court will consider them.

### B. Facial Constitutionality

Plaintiff contends Montana's political committee statute is unconstitutional for at least two reasons. First, Plaintiff argues the statute is substantially overbroad because it applies to groups whose expenditures are less than $500 or are *de minimis*. Second, Plaintiff avers that the information Defendants obtain via

7

the challenged regulations can be procured in a less burdensome manner. Plaintiff also argues that *United States v. Alvarez* prohibits laws regulating protected speech unless they are the least restrictive means among available alternatives. 132 S.Ct. 2537 (2012). Plaintiff's contentions fail because Montana's disclosure requirements are not substantially overbroad and the "least restrictive means" test does not apply to this exacting scrutiny analysis.

### 1. Degree of Scrutiny

"[A] campaign finance disclosure requirement is constitutional if it survives exacting scrutiny, meaning that it is substantially related to a sufficiently important governmental interest." *Brumsickle*, 624 F.3d at 1005. Strict scrutiny is not required because disclosure requirements only burden speech, they do not prevent it. *Id.*

The "least restrictive means" test promoted by Plaintiff is not applicable in this context. Although a plurality of the United States Supreme Court did apply the least restrictive means test in an exacting scrutiny analysis in *United States v. Alvarez*, the challenged speech in *Alvarez* is so dissimilar from a campaign finance disclosure challenge that it cannot bind this Court's decision. *Alvarez* involved a challenge to the Stolen Valor Act, a statute that criminalizes lying about receiving military honors. Nowhere does *Alvarez* discuss campaign finance or disclosure,

nor does it mention *Citizens United* or any of the precedent establishing that disclosure requirements are subject to exacting scrutiny. Thus, the least restrictive means test will not be applied and Plaintiff's arguments urging such an analysis fail.

### 2. Governmental Interest

"[D]isclosure provides the electorate with information 'as to where political campaign money comes from and how it is spent by the candidate' in order to aid the voters in evaluating those who seek federal office." *Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976). Disclosure laws combat the fierce and sometimes overwhelming competition between political groups for voters' attention. *Brumsickle*, 624 F.3d at 1006. The public's interest in disclosure by political groups is sufficiently important under exacting scrutiny, if not compelling under strict scrutiny. *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 793 (9th Cir. 2006) ("we believe that there is a compelling state interest in informing voters who or what entity is trying to persuade them to vote in a certain way"). In addition to providing voters with information, the government's interests include deterring actual corruption or the appearance thereof and gathering data needed to enforce electioneering restrictions. *Id.*

Defendants' interest in enforcing Montana's political committee disclosure

and reporting laws is sufficiently important to meet the exacting scrutiny standard. The Commissioner's office regularly receives inquiries from voters and interested citizens, candidates, reporters, and academics during election season regarding who is spending in Montana elections. It goes without saying that Montana voters are interested in who is financing political campaigns. The reporting and disclosure requirements for incidental committees are necessary for Defendants to regulate groups and candidates' compliance with Montana's election laws.

Plaintiff overstates the requirements incidental committees must meet under Montana law, which, in fact, are minimal and straightforward. Registration of any political committee requires filling out a C-2 form which involves listing a mailing address, a treasurer or contact person, an address for the committee's bank, and the committee's type and purpose. Admin. R. Mont. 44.10.411; Doc. 34 at 3. Incidental committees making contributions or expenditures then complete a C-4 form that is two pages long, as opposed to the ten page form required of PACs. Doc. 34 at 4. If a committee demonstrates to the Commissioner that its political activity will be *de minimis*, the committee may not be required to fill out a C-4 form. *Id.* at 6. Further, employees from the Commissioner's office frequently assist political committees in completing the requisite forms which generally take about 20 minutes total to complete. Doc. 31 at 7.

Contrary to Plaintiff's allegations, incidental committees are not required to maintain segregated bank accounts and usually do not file ongoing reports because their political activity ceases post-election. Doc. 34 at 4-5. All that is required to close an incidental committee is to check a box on the C-4 form. Although Plaintiff correctly points out that incidental committees are required to have a treasurer, the Court is not convinced that it is necessary to spend $600 to obtain these services. The only legal requirement for a treasurer is to be a registered voter in Montana. Mont. Code Ann. § 13-37-203. While a committee may choose to spend hundreds of dollars on a treasurer, this expense is certainly not required to comply with the statute. Thus, the burdens placed on incidental committees are not as onerous as Plaintiff maintains and not unreasonable given the important interests involved.

### 3. Substantial Relationship

The fundamental question in the exacting scrutiny analysis is whether Montana's political committee disclosure laws bear a substantial relationship to the important interests of the Defendants. Defendants argue that the Ninth Circuit has already decided that the exact same statutes and regulations being challenged here have been found to be facially valid in *Canyon Ferry*. Plaintiff disagrees, and argues that the *Canyon Ferry* decision was narrow in scope, and found the statutes

and regulations to be facially valid on only vagueness grounds without reaching the overbreadth argument, which is the focus of its challenge in this case. Plaintiff asks the Court to narrowly construe Montana's political committee laws by prohibiting enforcement of Montana Code Annotated § 13-1-101(22) against groups that incidentally engage in political speech and prohibiting regulation of incidental political committees under Admin. R. Mont. 44.10.327(2)(c). The Court finds that Defendants are correct on this issue. The challenged statutes are facially valid as discussed in *Canyon Ferry*. To the extent an overbreadth argument remains, Plaintiff does not meet the substantiality requirements necessary to prevail.

In *Canyon Ferry*, Canyon Ferry Baptist Church of East Helena sued the Montana Commissioner of Political Practices arguing it was not subject to Montana's disclosure requirements as an incidental political committee for its *de minimis* in-kind expenditures. 556 F.3d at 1028. The Commissioner found the following church activities to be in-kind expenditures: allowing a parishioner to photocopy a ballot-initiative petition form on the church's copy machine with her own paper, placing the petitions in the church foyer, and the encouragement by the church pastor during a sermon that church members should sign the petition. *Id.* at 1029. The church contended on both facial and as-applied constitutional grounds

that its *de minimis* in-kind expenditures should not be subject to Montana's campaign finance disclosure laws. Although the church challenged the laws on vagueness, overbreadth, and due process grounds, the Court focused on vagueness, holding that the "Montana regulation poses no vagueness problem in the vast majority of its intended applications" and thus was facially valid. *Id.* at 1025.

The *Canyon Ferry* Court then examined Montana's disclosure laws as applied to the church's activities, determining that "as applied to the one-time in-kind expenditures involved in this case, the state reporting requirements violate the church's First Amendment rights." *Id.* at 1031. In so holding, the Court examined Montana's zero-dollar disclosure threshold in the ballot-initiative context, noting that the value of the financial disclosure information to voters declines sharply as the monetary value of the expenditure approaches zero. *Id.* at 1033. However, the Court went on to say "[i]t may very well be that . . . all monetary contributions convey sufficiently valuable information to justify the burden of disclosure." *Id.* at 1034. The Court carefully limited its holding to the facts presented, appropriately leaving it to the Montana Legislature to determine the level of contribution or expenditure that would pass constitutional muster:

In this case, we are not concerned with-and express no view about-the

13

> constitutionality of Montana's disclosure requirements in the context of candidate elections or as applied to monetary contributions of any size. We also do not purport to establish a level above *de minimis* at which a disclosure requirement for in-kind expenditures for ballot issues passes constitutional muster. The fixing of any such level is for the Montana authorities in the first instance.

*Id.*

The Court finds that Montana's political committee disclosure laws, Mont. Code Ann. § 13-1-101(22) and Admin. R. Mont. 44.10.327, are facially valid for the following reasons. First, the Ninth Circuit Court of Appeals analyzed overbreadth and vagueness challenges to these laws in *Canyon Ferry* and did not find them overbroad. Second, the minimal effort mandated by the disclosure requirements does not outweigh Defendants' important interests in informing the public who is funding political campaigns. Third, Montana's zero-dollar threshold is not wholly without rationality. Fourth, the Ninth Circuit has already declined to follow *Buckley*'s major-purpose rule, so Plaintiff's proportionality arguments necessarily fail.

### a. *Canyon Ferry*

Returning to the *Canyon Ferry* decision, the Court determined that the same laws challenged by the Plaintiff in this case were not facially invalid for vagueness. The Court specifically stated it was not concerned with Montana's

14

disclosure requirements as they relate to candidate elections or monetary contributions. Here, Plaintiff sought to send a postcard criticizing then-candidate Bullock's position on gun rights, and intends to send similar mailings in the 2014 and 2016 elections. The governmental interests of deterring corruption, providing transparency, and enforcing election restrictions are more present in this case than in the ballot-initiative challenge involved in *Canyon Ferry*. Weighing the relationship of the disclosure laws against the substantial governmental interests in this case, the Court finds that the Defendants' interests arguably weigh heavier than those in *Canyon Ferry*.

The Church in *Canyon Ferry* asserted overbreadth challenges and the Court did not find the disclosure laws overbroad. Instead, the Court held Montana's definition of in-kind expenditure and its disclosure requirements for incidental political committees were unconstitutionally vague as applied to the church's *de minimis* activities. The *Canyon Ferry* Court had every opportunity to determine Montana's laws were overly broad because they chilled speech by forcing small and incidental political groups to disclose and report, but it did not do so. However, because the overbreadth argument was not expressly addressed by the *Canyon Ferry* court, this Court will analyze the facial validity of Montana's statutory and regulatory scheme under this doctrine.

15

### b. Disclosure Requirements

The incidental committee disclosure and reporting requirements are substantially related to Defendants' important interests. The burden associated with Montana's regulations for incidental political committees are minimal, and similar to the disclosure requirements in *Brumsickle*, the disclosure obligation increases with the amount of political involvement by the committee. However, Montana's disclosure forms for incidental political committees require only basic information and only a few minutes to complete. The reporting requirements are only slightly more onerous, and are unnecessary if the committee informs the Commissioner that its activity is *de minimis*. Plaintiff argues that any disclosure requirement, no matter how minimal, chills speech and is therefore unconstitutional. Undoubtedly, some amount of speech will be chilled for those who are unwilling to fill out the disclosure forms. If persons or groups prefer to withhold speech rather than fill out simple forms, that is their choice. But, the public's interest in transparent political funding outweighs the minimal burden the incidental disclosure requirements impose, even for one-time expenditures. *Family PAC v. McKenna*, 685 F.3d 800, 809 (9th Cir. 2012).

### c. Montana's Zero-dollar Disclosure Threshold

Plaintiff further challenges Montana's zero-dollar disclosure threshold,

arguing a minimum threshold is required to filter out committees making *de minimis* expenditures. Plaintiff points out that Mary Baker, the Commissioner's Program Supervisor, agreed at a 2013 legislative hearing that a dollar-amount is needed so the Commissioner does not have to consider each expenditure on a case-by-case basis. While there may be some agreement that a minimum-dollar threshold would be helpful in enforcing Montana's laws, Montana's Legislature has not yet come to such a conclusion. For the reasons described below, it is not the Court's place to do so now.

Disclosure threshold requirements are upheld unless they are "wholly without rationality." *Canyon Ferry*, 556 F.3d at 1033. In *Family PAC*, the Ninth Circuit rejected a challenge to Washington's disclosure laws which trigger disclosure at $25. The Court recognized that the value of disclosure declines with the amount of the contribution. *Family PAC*, 685 F.3d at 809. However, the Court observed without deciding that even a zero-dollar disclosure threshold would likely survive exacting scrutiny. *Id.*; *See Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 300 (1981) ("[I]f it is thought wise, legislation can outlaw anonymous contributions."); *Canyon Ferry*, 556 F.3d at 1034 ("It may very well be that ... all monetary contributions convey sufficiently valuable information about the supporters of an initiative to justify the burden of disclosure."). The

Court did "not agree with Family PAC's contention that disclosure of small contributors does not provide information that enables the electorate to evaluate campaign messages and make informed decisions" because "small contributions may provide useful information to voters when considered in the aggregate." *Family PAC*, 685 F.3d at 810. Further, the Court noted that it was unaware of any judicial decision striking down a disclosure requirement because the contribution threshold was impermissibly low. *Id.* Finally, because disclosure thresholds are inherently inexact, courts must defer to the legislative branch in setting proper amounts. *Id.* at 811.

All of these reasons weigh in favor of upholding Montana's zero-dollar disclosure threshold and granting deference to the legislature to decide if a higher threshold amount is required. All of the reasons supporting a $25 threshold requirement hold true for a zero-dollar requirement. Small contributions made by special interest groups still hold informational value in the aggregate, whether they contribute $10 or $25. Because the cost of political campaigns in Montana is low–on average a state House candidate spends $9,000-$12,000 on a campaign–a lower threshold is more appropriate here than in states where candidates spend greater amounts on their campaigns. In sum, it cannot be said that Montana's zero-dollar disclosure threshold is wholly without rationality and Plaintiff's

challenge therefore fails.

### d. Major-Purpose Rule

Plaintiff's proportionality argument under *Buckley*'s major-purpose rule is not supported by law and violates basic notions of equity and fairness. Plaintiff contends that it should not be required to comply with Montana law provided the percentage of the political expenditure as compared to the entity's total budget is low, regardless of the actual amount of money being spent. The obligation to disclose and report should not be tied to the relative size of a person or entity's total budget. As Plaintiff recognizes, *Brumsickle* instructs that a group need not have a primary political purpose to be required to disclose. *Brumsickle*, 624 F.3d at 1011.

### V. Conclusion

Montana's disclosure and reporting requirements for incidental political committees are facially valid because they are not substantially overbroad, the zero-dollar threshold will not be altered by the Court, and the major-purpose rule is not accepted by the Ninth Circuit. Plaintiff's challenge fails on all fronts, its motion will be denied, and Defendants' motion will be granted.

IT IS ORDERED that Defendant's Motion for Summary Judgment (doc. 22) is GRANTED and Plaintiff's Motion for Summary Judgment (doc. 26) is

DENIED. The Clerk is directed to enter Judgment in accordance with this Order.

DATED this 17th day of September, 2013.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court